CITY OF NEW YORK, Plaintiff, *v.* BROOKLYN AND MANHATTAN FERRY COMPANY, Defendant.

(Supreme Court, New York Special Term for Trials, June, 1920.)

Damages — liquidated — lease — city of New York — ferry companies — bonds.

> The city of New York entered into a lease with the defendant for the operation of certain ferries for a period of ten years. Defendant was obligated to continue operation of the ferries until March 15, 1921, but ceased operating them on June 1, 1918. As collateral security to a bond of $50,000 given by defendant to guarantee the continuance of the ferry service in accordance with the terms of the lease defendant deposited with the comptroller of the city of New York corporate stock of said city of the face value of $53,000. The plaintiff claims a lien on the security deposited with the comptroller in the amount of $50,000 as liquidated damages for the discontinuance of the ferries by defendant before the expiration of the term of its lease, in addition to the amount due it from defendant as rent. *Held*, that although the bond states that the collateral is held " as security for the faithful performance of the covenants and conditions of said lease as modified " and ordinarily such language is indicative of a penalty rather than liquidated damages, the loss to the public in this instance, however, cannot be regarded as merely nominal, as the ferry service having been abandoned by the defendant nearly three years before the expiration of the term of the lease the public were deprived of the one object for which the lease was made, and the sum of $50,000 is not an unreasonable amount to fix as liquidated damages. Judgment accordingly.

ACTION upon a lease.

John P. O'Brien, corporation counsel (Josiah A. Stover and John J. Haggerty, of counsel), for plaintiff.

Gilbert & Gilbert, for defendant.

GAVEGAN, J.   The parties entered into a lease by which the city demised to the ferry company for a term of ten years, with renewal privileges, certain property to be used in the operation of two ferries. As rental for the property and franchises used in connection with one of the ferries the company agreed to pay the city $1 a year and for similar property and rights in connection with the other, the Roosevelt Street ferry, the company agreed to pay the city one-half of what is referred to in the contract as " net profits," payable after the expiration of each year of operation.   And the city agreed to pay the company $11,000 per month.   The company also agreed to provide ferryboats to operate the ferries, to pay certain expenses for maintaining and repairing city property and for dredging, to build and maintain certain structures and appurtenances and to reimburse the city for damages recovered by third persons under stated circumstances.

In the preambles to the agreement, said lease, it is recited that " the company shall furnish a surety bond, approved by the Comptroller for Fifty thousand dollars ($50,000) to guarantee the continuance of the ferry service for the term and in accordance with the conditions of the lease."

The relations between the parties so far as we are now concerned are governed by the agreement referred to, dated December 11, 1909, a supplementary or modifying agreement of April 29, 1911, and a bond for $50,000 which refers to both and reads, in part, as follows:

" *Now, Therefore, the conditions of this obligation*

*are such,* That if the said The Brooklyn and Manhattan Ferry Company, its successors and assigns, shall and does pay,. perform, fulfill, observe and keep, or cause to be paid, performed, fulfilled, observed and kept, each and every of the covenants, agreements, clauses, terms and conditions in said lease and modification agreement contained, on its part to be paid, performed, fulfilled, observed and kept, without fraud and delay and particularly that if the Brooklyn and Manhattan Ferry Company shall well and truly maintain and operate and cause to be maintained and operated the said ferries during the term of said lease and in accordance with the conditions thereof, then this obligation shall be null and void, otherwise to remain in full force and effect; and in lieu of a surety to this obligation and as collateral security for the further assurance of the faithful performance of this obligation, the said the Brooklyn and Manhattan Ferry Company hereby authorizes the Comptroller of The City of New York to retain the said registered bonds last above mentioned and described." The " collateral security " referred to as " registered bonds " consists of so-called " Registered Corporate Stock of the City of New York " of the face value of $53,000, and in the preambles to the bond it is recited that same is held " as security for the faithful performance of the covenants and conditions of said lease as modified."

Defendant was obligated to continue operation of the ferries until March 15, 1921, but ceased operating them on June 1, 1918.

Plaintiff seeks in this action to recover $41,384.26 and interest, which it is now conceded should be credited to plaintiff, said sum being the amount of half of what the contract denominates " net profits " for the last complete year of operation. The answer inter-

poses denials, several defenses and counterclaims. First, defendant seeks to recover the monthly payment of $11,000 for the month of May, 1918. Secondly, it alleges a surrender and acceptance of the lease and, substantially, demands the return of the collateral security referred to above, after the satisfaction therefrom of the amount found to be due to plaintiff. By its reply the city interposes denials and several defenses to the alleged counterclaims. Among other matters, the city alleges that " the paramount consideration " and that which induced it to enter the contracts with defendant was defendant's agreement to operate the ferries for the full term of ten years for the convenience of the public, that the bond was furnished to guarantee such operation. The city contends that by the agreements the sum of $50,000 was stipulated as liquidated damages in the event that defendant should cease operation of the ferries; that therefore said sum is due the city as liquidated damages; and that it has a lien for that amount on the security.

(1) The principal question to be determined is whether the parties stipulated for liquidated damages. It is nowhere specifically stated in the said instruments that liquidated damages are agreed to and, in fact, as already set forth, we find the bond states that the collateral is held " as security for the faithful performance of the covenants and conditions of said lease as modified." Ordinarily such language is indicative of an intention that the stipulated amount is to be regarded as a penalty rather than as a stipulation for liquidated damages. It must be admitted that the bond does not in clear and unmistakable language support the city's contention. But, in the absence of provisions which would leave no doubt, the intention of the parties as to whether or not liquidated damages

were provided in certain contingencies must be ascertained by reference to the subject matter as well as to the language of the agreements. And we must, in such case, also look to the situation which the agreements show the parties intended to meet and the surrounding circumstances which are thus shown to have been within their mutual contemplation. As we are, in discussing this point, considering what damages should be imposed on defendant for its failure to continue to operate the ferries we must be governed by what we determine the parties intended would be the consequences in case of such a breach by defendant. Did they intend that the defendant, if it found the ferries unprofitable, might abandon their operation at any time without thereby rendering itself liable to damages, though operation of the ferries was the end contemplated by the agreements and what defendant undertook to provide? Defendant stresses the fact that it contracted various undertakings subsidiary to such operation. But we must not lose sight of the fact that they were so subsidiary, that but one thing was sought by plaintiff and undertaken by defendant, operation of the ferries.

There are several fairly well established rules of construction which may be applicable to this situation and which, if applied, would tend for a construction favorable to defendant's view, that the parties did not stipulate for liquidated damages and that the bond provides merely a " penalty," that is, security for performance and for the payment of such actual damages as can be proved.

It is to be noted that while the agreement of December, 1909, recites that the company will furnish a "surety bond " to guarantee the continuance of the ferry service, the condition of the bond provides that it shall perform each and every of the terms and condi-

tions of the agreements and particularly that it shall maintain and operate the ferries during the term. " * * * where a contract contains several covenants of different degrées of importance, and the sum named is to be paid for the breach of any of them, even the least, it will be treated as a penalty * * *. This rule applies * * * where the damages which would result from a breach of some of the stipulations are readily ascertainable, while others are not * * *." 8 R. C. L. 571, Damages, § 120; *Lansing* v. *Dodd,* 45 N. J. L. 525. On the other hand, it is to be remembered that the rule is only one of construction and that it may be inapplicable to a particular situation. Counsel for the city call attention to the discussion in *Springwells Township* v. *Detroit, P. & N. Ry.,* 103 N. W. Repr. 700, which is in point. After citing cases in the same state, Michigan, where the rule referred to was applied, the opinion continues (at p. 701): " This rule of construction is wise and salutary as applied to contracts between private parties, and has frequently been approved by this court. But as to contracts between municipalities acting in their governmental capacities and public service corporations, where the contracts are affected by a public interest, the application of the rule must obviously be modified by the widely different status of the parties." And again: " The construction of a line of railway was the prominent thing in the minds of the parties. The weight of the rails, the gauge, the planking at crossings, and other details of construction, were merely the elements which were descriptive of and went to make up the completed whole. The bond in suit was intended to enforce a substantial performance of the contract for the benefit of the inhabitants of Springwells, and for that purpose provided for damages in default of such performance. The status

of the parties, and the fact that otherwise no damages would be ascertainable, warrant the construction that the parties intended the provision for $10,000 as liquidated damages for a substantial failure to perform the entire contract, rather than as a penalty to secure the exact performance of each separate provision for construction."

Another rule applied in these cases is stated in *Lansing* v. *Dodd, supra,* 529, thus: " Where it is doubtful, from the whole agreement, whether the sum named is intended as a penalty or stipulated damages, it will be construed as a penalty."

There is also authority for the proposition that a contract cannot be interpreted as providing for liquidated damages for the breach of some of its provisions and for a penalty in reference to damages flowing from the breach of its other provisions.

Again, the city, while asserting there is a stipulation for liquidated damages, in the sum of $50,000, to cover the contingency of defendant's abandoning the ferries, claims that it is entitled, not only to that stipulated sum to cover that default but also to a judgment for half the profits of 1917, which were not paid to it. It is easy to take a point of view from which these two claims can be regarded as inconsistent, that the city claims both that there has been a stipulation for liquidated damages in the sum of $50,000, and that the court should render a decision which implies that it is entitled to recover $50,000 plus its half of said profits, a total of $91,384.26.

I have given due consideration to the foregoing points and the other points advanced by defendant and they have had very great weight with me as tending to sustain defendant's position. Nevertheless, I am convinced the record shows the city should prevail in its contention that the parties intended the defend-

Supreme Court, June, 1920. [Vol. 112.

ant could not abandon operation of the ferries for a substantial part of the term without forfeiting $50,000 to the city for that breach. It is true that questions might have arisen as to whether a failure to operate for one day, or a week, or several months would have the same effect. And, to sustain my view, it seems necessary to find that the parties intended that the bond should in some respects be construed as providing merely for a penalty, and in other respects as providing for liquidated damages. But if that was the intention of the parties and if the record demonstrates that they so intended, no rules of construction shall be allowed to defeat their purpose.

The controlling point of view is the entire situation, including the surrounding circumstances as indicated above.

To secure ferry service for the public the city contributed the use of property of immense value, went to great preliminary expense and agreed to pay defendant large sums, a total of $1,320,000, during the agreed term, regardless of whether the result of operation of the Roosevelt Street ferry would or would not be such that its money would be returned. There was just one thing to be accomplished, ferry service. All else in the contracts was subordinate to securing that service. It went without saying that if the ferries proved profitable they would not be abandoned. If they proved unprofitable the city was nevertheless required to contribute money each month. Evidently the public authorities had decided to secure the service, even at a maximum direct loss, so far as its treasury was concerned, to the city. Having assumed a risk which, as the record demonstrates, was to result in such loss, was it the intention that the defendant would be free to quit at any time without makng any compensation for its failure to supply the one thing which

it agreed to supply for ten years? It being probable
that defendant's abandonment of the contract, should
it prove not to be profitable, would result in a
pecuniary gain to the city, was it not the intention that
the bond should be held over defendant to secure opera-
tion for the benefit of the public? The agreement of
December, 1909, recited that the bond should be fur-
nished " to guarantee the continuance of the ferry serv-
ice for the term * * *." And the bond provides that it
is given " particularly " to secure defendant's mainte-
nance and operation of the ferries during the term of
the lease. That recital in the contract and that pro-
vision in the bond can have no effect unless the parties
intended a stipulation for liquidated damages on
defendant's abandonment of operation for a substan-
tial part of the term; for, as stated, that abandonment
would not take place if the ferries paid and meant a
gain and not a loss, in money, to the city. And in any
event the loss to the public resulting therefrom could
not be calculated in money.

Defendant assumes that there was no loss, that it is
a case of nominal damages. It seems to me the situa-
tion here permits of no such assertion. The repre-
sentatives of the public planned to have the service.
To secure it they had the city undertake large expense
and had it hand over to defendant, for ten years,
exceedingly valuable property. And defendant, know-
ing all that, undertook to supply the service. Under
such circumstances it was not within the contemplation
of the parties that the defendant was left free to stop
the service and, on an assumption that there was no
loss to the public because there was no pecuniary loss
to the city, escape liability for the breach. In its
briefs defendant relies on cases where public contracts
had been substantially performed and where the courts
refused to allow forfeiture of stated sums to cover

Supreme Court, June, 1920.  [Vol. 112.

mere nominal damage. Its whole position here is faulty because it fails to realize that this is not a case where the damages can be regarded as nominal. The service having been abandoned nearly three years before the expiration of the term, the breach resulted in substantially depriving the public of the one object of the undertakings of the parties. While the loss to the public is not capable of ascertainment it cannot be regarded as merely nominal. Considering the obligations assumed by the city, the expense it went to, the property and moneys contributed by it and the result to be accomplished, $50,000 was not an unreasonable sum to fix as damages for a substantial failure to supply the service.

(2) As to the item of $11,000, I will find for the defendant.

Judgment accordingly.